UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00021-MOC

| | | |
|---|---|---|
| **BETH ROBINSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **KILOLO KIJIKAZI,** | ) | |
| **Acting Commissioner of Social Security**, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 6) and on Defendant Commissioner's Motion for Summary Judgment (Doc. No. 8). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on her application for Title II disability insurance benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

I. ADMINISTRATIVE HISTORY

On March 19, 2021, Beth Robinson ("Plaintiff") file for Title II Disability Insurance Benefits ("DIB"), with an alleged onset date ("AOD") of March 16, 2021. (Administrative Record ("AR") at 72; 134). Plaintiff is 52 years old, has a high school education and past relevant work as a student activity advisor, administrative assistant, and technical support specialist. (Id. at 19).

Plaintiff's initial application and reconsideration application were denied. (Id. at 86). Plaintiff then requested a hearing with an ALJ, and the hearing was held on November 18, 2021.

1

(Id. at 86, 96). Following the hearing, the ALJ issued the above referenced unfavorable decision, dated June 6, 2022. (Id. at 7). Plaintiff's request for review was denied by the Appeals Council, making the ALJ's decision the final determination of the Commissioner. (Id. at 1).

Plaintiff initiated this action challenging the ALJ's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c). The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.     FACTUAL BACKGROUND

Plaintiff hurt her back after slipping on ice at the Grand Canyon in January 2020. (AR at 378). As a result of this fall, Plaintiff alleges disability due to degenerative disc disease ("DDD") of the lumbar spine with severe stenosis and radiculopathy, DDD of the cervical spine with osteophyte formation and spinal cord compression, migraines, obesity, arthritis, and anxiety.

Plaintiff reported that pain limited both her ability to stand and walk, and her ability to focus and concentrate. Specifically, Plaintiff testified that back and leg pain prevented her from standing or walking for more than 5-10 minutes at a time. (Id. at 60). Furthermore, Plaintiff testified that she could not sit long and focus, due to back and leg pain, as well as migraine headaches. (Id.). According to Plaintiff, her limited physical capabilities and attentiveness due to pain interfered with her ability to perform work activities. (Id. at 54).

However, Plaintiff also reported her backpain improved with treatment. See e.g. (Id. at 426) (Plaintiff's medication "makes her pain tolerable"); (Id. at 430) (with medication and physical therapy exercises Plaintiff's back pain "improved from a 7 out of 10 down to a 2 or 3 out of 10" and "she is pleased with her progress"); and (Id. at 463) (Plaintiff reported walking daily and was exercising several times per week at the gym despite her back pain). The final

2

treatment note in the record from January 2022 described Plaintiff as still exercising several times per week at the gym though limited by her back pain. (Id. 462).

MRI and x-ray findings prior to the period of alleged disability showed disc disease and spinal stenosis, and subsequent scans of Plaintiff's lumbar spine were consistent with facet hypertrophy and moderate disc space narrowing. (Id. at 17, 280, 387).

Plaintiff also underwent physical examinations. At a June 2021 consultative examination, Timothy Johnson, M.D., found evidence of increased muscle spasms with range of motion limitations and difficulty bending at the waist, stooping, and squatting. (Id. at 17, 273–78). However, Doctor Johnson also found that Plaintiff demonstrated a normal gait; normal ability to stand on heels and toes; full and symmetric muscle strength and tone in her bilateral upper and lower extremities; no evidence of atrophy; and negative straight leg raise testing in seated and supine positions. (Id. at 17, 277). An October 2021 examination with Doctor Johnson documented tightness and pain in Plaintiff's left buttock and lower back with forward flexion and extension of her back, along with Plaintiff's reports of mild pain during left straight leg raising (Id. at 17, 291). Furthermore, Nancy Simpkins, M.D., and Robert McGuffin, Jr., M.D., found that Plaintiff could perform the sitting and standing requirements for a range of light work with additional postural limitations. (Id. at 17–18, 74–76, 81–82). After evaluating the findings related to Plaintiff's back pain, the ALJ explained that he "deferred to the treating providers" when it came to assessing Plaintiff's diagnoses. (Id. at 18).

The ALJ conducted the five-step sequential review process to determine whether Plaintiff is disabled, and denied Plaintiff her claim at Step Five of the process. (Id. at 20–21). The ALJ found that Plaintiff could stay on task to perform the sitting and standing requirements for a range of light, unskilled work. (Id. at 16). The ALJ's RFC finding included no limitations on

3

Case 1:23-cv-00021-MOC    Document 11    Filed 08/01/23    Page 3 of 13

sitting, standing, or walking whether over the course of the workday or at one time. (Id.).
Moreover, the ALJ found "with regard to concentrating, persisting or maintaining pace, the
claimant has a moderate limitation." (Id. at 15).

### III. STANDARD OF REVIEW

#### a. Substantial Evidence Review

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. Review by a federal court is not de novo. Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986). Rather, inquiry in disability cases is limited to whether the ALJ (1) supported her findings with substantial evidence and (2) applied the correct law. Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). In other words, substantial evidence is enough relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Fourth Circuit has explained substantial evidence review as follows:

4

Case 1:23-cv-00021-MOC   Document 11   Filed 08/01/23   Page 4 of 13

the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

An ALJ must also apply the correct law. A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

**b. Sequential Evaluation**

The Social Security Administration uses a five-step sequential review process to determine whether an individual is disabled. 20 C.F.R. 404.1520(a) and 416.920(a). An ALJ evaluates a disability claim as follows:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

5

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. Residual Functional Capacity (RFC)

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. RFC is the most someone can do despite their mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). To determine RFC, the adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3). Thus, the ALJ's RFC assessment must always consider the medical source opinions of record, and when an ALJ's ultimate RFC assessment conflicts

6

with the opinion of a medical source, the ALJ must explain the reason for rejecting that opinion. SSR 96-8p.

Social Security Regulations dictate the manner in which an ALJ must evaluate and consider medical opinion evidence. For claims, such as this one, filed after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c applies and requires the ALJ to consider the following factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). As with the old regulation, "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

However, supportability and consistency are now specified as the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As such, the regulations contain "articulation requirements," which state that the ALJ "will explain" in his decision how the supportability and consistency factors were considered for each medical source opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). The regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the

more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is an external check that references evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). The regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Finally, the ALJ must support each conclusion with evidence. SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week), or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

In other words, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio v. Colvin, 780 F.3d 632, 694 (4th Cir. 2015) (quoting Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010).

**IV. FINDINGS AND CONCLUSIONS**

Plaintiff alleges two errors in the ALJ's decision require the decision to be overturned. First, Plaintiff contends the ALJ failed to perform a function-by-function analysis of Plaintiff's contested and relevant ability to stand and walk. Second, Plaintiff argues that the ALJ violated Mascio v. Colvin, because the ALJ noted Plaintiff's reported difficulty concentrating, yet failed to include a limitation for Plaintiff's impaired concentration or explain the absence of a limitation. 780 F.3d 632 (4th Cir. 2015).

### A. Function-by-Function Analysis of Plaintiff's Ability to Stand and Walk

Social Security Ruling (SSR) 96-8p explains how an ALJ should assess an individual's RFC. SSR 96–8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). SSR 96-8p requires an RFC to address both the exertional and non-exertional capacities of the individual. The exertional capacity assessment considers an individual's limitations and restrictions of physical strength and defines an individual's ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8P.

The RFC assessment of exertional capacity should first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id. SSR 96-8P further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id.; see also Mascio, 780 F.3d at 636. Specifically relevant here, if a claimant offers testimony and the ALJ determines that the testimony is not credible, the ALJ must "build an accurate and logical bridge from the evidence

9

to his conclusion that the claimant's testimony was not credible." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017).

Plaintiff testified that after injuring her back, she suffered leg pain, back pain, and migraine headaches. Plaintiff left her work, citing her pain as incapacitating and testified to taking Gabapentin, Celebrex, and Tylenol to partially alleviate her chronic pain. Plaintiff has testified that she has difficulty standing or walking for more than 5-10 minutes at a time before she must sit down and rest due to pain exacerbation. (AR at 60). She has also said that she is unable to sit for more than a few minutes before needing to get up and move around. (Id. at 55). Despite this testimony, the ALJ found Plaintiff capable of light exertion work, which can include standing and walking for 6 hours out of an 8-hour workday without limitation. (AR 16).

Plaintiff alleges that the ALJ failed to follow SSR 96-8P because, according to Plaintiff, the ALJ does not explain how the evidence supports his conclusion that Plaintiff can perform 6 out of 8 hours of standing and walking and, concurrently, the ALJ does not explain why Plaintiff's testimony regarding her limited ability to stand and walk for only 5-10 minutes at a time is not supported by the record. In response, Defendant argues the Fourth Circuit has not adopted a per se rule requiring remand when the ALJ did not perform an explicit function-by-function assessment, so long as the ALJ's path to their conclusion can reasonably be discerned. Mascio, 780 F.3d at 636 (refusing to adopt a "per se rule requiring remand when the ALJ did not perform an explicit function-by-function assessment").

Here, the ALJ's opinion has provided the analysis needed for this Court to reasonably understand how the ALJ reached the conclusion that Plaintiff is capable of light exertion work. The ALJ's RFC analysis briefly summarizes Plaintiff's testimony regarding her limited exertional capabilities. (AR at 17). The analysis also references third party statements by

10

Plaintiff's mother and Plaintiff's close friend, which support Plaintiff's testimony. (Id. at 18). However, the ALJ found Plaintiff's described limitations "are largely unsupported by objective findings" and in contradiction with Plaintiff's medical examinations. (Id. at 17). Specifically, the ALJ considered Dr. Johnson's medical determination that Plaintiff demonstrated a normal gait; normal ability to stand on heels and toes; full and symmetric muscle strength and tone in her bilateral upper and lower extremities; and no evidence of atrophy. (Id. at 17, 277). Furthermore, the ALJ considered state agency consultant Dr. Nancy Simpkins's opinion that, given the evidence, Plaintiff is able to perform work activities at the light exertional level with additional postural limitations. (Id. at 17). Lastly, the ALJ considered Dr. Robert McGuffin's subsequent affirmation of Dr. Nancy Simpkins' opinion. (Id.).

After consideration of both Plaintiff's testimony, objective medical evidence, and the opinion of medical professionals, the ALJ determined Plaintiff's alleged symptoms did exist but the alleged "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Id. at 18). Ultimately, the ALJ explained that he "deferred to the treating providers" when it came to assessing Plaintiff's diagnoses and found the treating providers' medical analysis more persuasive than Plaintiff's subjective account of her symptoms. (Id.).

While the ALJ did not conduct an explicit function-by-function assessment, this Court can reasonably discern the ALJ's rationale for the RFC determination and engage in meaningful review, applying the deferential substantial evidence standard of review. Ray v. Comm'r of Soc. Sec., No. 1:21CV00159-RJC, 2022 WL 3364311, at *4 (W.D.N.C. Aug. 15, 2022) (citing Woods v. Berryhill, 888 F.3d 686, 692–93 (4th Cir. 2018) ("[T]he ALJ must adequately explain his reasoning; otherwise, we cannot engage in meaningful review.")). Applying the deferential

substantial evidence standard of review, this Court finds that the ALJ's determination of Plaintiff's ability to stand and walk is adequately supported with objective medical evidence and medical opinions.

### B. Plaintiff's Ability to Concentrate

SSR 96-8P requires "a narrative discussion describing how the evidence supports each conclusion" for non-exertional capacities, just as it does for exertional capacities. Mascio, 780 F.3d at 636. So too, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" that a claimant's testimony regarding non-exertional capacity is not credible. Brown, 873 F.3d at 269.

Here, the ALJ noted Plaintiff's ability to concentrate as follows:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. Treatment records detail the claimant's history of migraine headaches with associated sensitivity to sound and lower back pain. The claimant also testified she experienced impaired concentration due to her pain symptoms.

(AR at 15). However, despite noting this moderate limitation, the ALJ's RFC only included a limitation of work to "simple tasks." (Id. at 16). A limitation to simple or routine tasks does not account for difficulties concentrating on a task, be it simple or complicated. Mascio, 780 F.3d at 638. Therefore, by restricting Plaintiff's work to simple tasks, the ALJ did not account for Plaintiff's moderate limitation on concentration. Furthermore, the ALJ did not provide any additional explanation for excluding additional work-related limitations into the RFC that would account for Plaintiff's moderate limitation on concentration.

Accordingly, this Court is not able to engage in meaningful review of the ALJ's RFC assessment as it pertains to Plaintiff's non-exertional limitations. Because this Court cannot conduct meaningful review, it must remand this case to the ALJ to further explain why he did not

incorporate a work-related limitation into the RFC to account for Plaintiff's moderate limitation in concentration.

## V. CONCLUSION

In sum, this matter is remanded for further administrative proceedings consistent with this Order. Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 8) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: July 31, 2023

Max O. Cogburn Jr
United States District Judge